IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WITHROW, | ) | CASE NO. 1:14 CV 1079 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ERNIE MOORE, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Christopher Withrow, proceeding *pro se*, for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Withrow was convicted by an Ashtabula County Court of Common Pleas jury in 2011 and was found guilty of one count of aggravated murder, two counts of murder, and two counts of aggravated robbery.[3] Withrow is serving a life sentence with the possibility of parole after 30 years.[4] He is currently incarcerated at the Trumbull Correctional Institution in Leavittsburg, Ohio.[5]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge James G. Carr by non-document order dated June 19, 2014.

[2] ECF # 1.

[3] ECF # 6-18, at 2189-91.

[4] ECF # 6-19, at 2376.

[5] Withrow's current location, according to the Department of Correction's "Offender Search," at http://www.drc.ohio.gov/OffenderSearch/details.aspx?id=A604923 is Trumbull County Correctional Institution. However, Withrow indicated that he filed his writ while detained at the Lebanon Correctional Institution, Warren County, Ohio as seen at ECF # 1.

Withrow raises three grounds for habeas relief.[6] The State has filed a return of the writ arguing that the petition should be dismissed in part on the first two grounds as procedurally defaulted. The State argues that the remaining ground should be denied as it fails on the merits.[7] Withrow has filed a traverse.[8]

For the reasons that follow, I will recommend Withrow's petition be dismissed in part in respect to the first two grounds and denied in part on the final ground.

## Facts

### A.      Factual Background

The facts that follow are a summary of the facts found in the decision of the state appeals court.[9]

The case against Withrow arises out of the death of William Post, who was murdered on Christmas Day in 2009.[10]

---

Further, in respondent's return of writ, Withrow is indicated as being detained in Lorain Correctional Institution in Grafton, Lorain County, Ohio, as seen at ECF # 5. Regardless of these inconsistencies, it appears that Withrow was detained at the time of filing his petition.

[6] ECF # 1, at 2.

[7] ECF # 5, at 12, 13.

[8] ECF # 7.

[9] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[10] ECF # 6-1, at 1.

In the early morning, on December 25, 2009, Christopher Withrow, Darlene Lister, Keri Dennison, and Joel Schick were using crack-cocaine.[11] The group ran out of drugs, at which time Withrow contacted the victim William Post in order to arrange a sex-for-money exchange between Lister and Post.[12] Post agreed and spent a few hours with Lister.[13] Lister was eventually picked up by Withrow at which time Lister indicated that Post had more money that he refused to give her.[14]

After dropping Lister off, Schick and Withrow returned to Post's apartment.[15] Withrow entered Post's apartment and upon leaving, informed Schick that he had "killed the guy inside."[16] The pair left the area.[17]

Sometime later, Withrow asked Schick for help cleaning up Post's apartment, which Schick refused to do.[18] Withrow headed back to Post's apartment alone, at which time he was spotted by three witnesses, two of which later identified him through a photo array analysis.[19]

---

[11] *Id.*, at 2.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*, at 3.

[17] *Id.*

[18] *Id.*

[19] *Id.*

After the discovery of Post's body, investigators were lead to Withrow who lied several times about his interactions with Post.[20] After further questioning, investigators were lead to Withrow's girlfriend's residence where they found Withrow's wet clothing with what appeared to be blood stain spattering on them.[21]

After the investigation, the state filed an indictment in September, 2011, charging Withrow with two counts of murder, two counts of aggravated murder, and two counts of aggravated robbery.[22] Withrow pleaded not guilty to all charges and filed a motion to suppress the photo identification from two witnesses, alleging that the array of photos used was impermissibly suggestive.[23] Withrow's motion was overruled by the state trial court.[24] The case was tried to a jury in September, 2011, and Withrow was found guilty of one count of aggravated murder, two counts of murder, and two counts of aggravated robbery; the parties agreed that these charges should be merged for ease of sentencing.[25] Withrow was sentenced to life in prison with the possibility of parole after 30 years.[26]

---

[20] *Id.*, at 4, 5, 6.

[21] *Id.*, at 6.

[22] *Id.*

[23] *Id.*

[24] ECF # 6-6, at 125.

[25] ECF # 6-1, at 6.

[26] *Id.*

**B.      Direct Appeal**

*1.      Ohio Court of Appeals*

Withrow, through counsel other than his counsel at trial,[27] filed a timely[28] notice of

appeal[29] with the Ohio Court of Appeals. In his brief, Withrow filed three assignments of

error:

> FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN NOT
> SUPPRESSING THE PRETRIAL IDENTIFICATION OF APPELLANT.[30]
>
> SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT ERRERED
> [sic] IN ALLOWING A MEMBER OF LAW ENFORCEMENT TO
> RENDER HIS OPINION OF APPELLANT'S TRUTHFULNESS.[31]
>
> THIRD ASSIGNMENT OF ERROR: THE VERDICT IS AGAINST THE
> MANIFEST WEIGHT OF THE EVIDENCE AND THE SUFFICIENCY OF
> THE EVIDENCE.[32]

---

[27] ECF # 6-22. Withrow acquired new counsel for this appeal, Michael A. Hiener. Counsel on behalf of Withrow at trial was made up of Marie Lane and Dean Topalof. ECF # 6-11, at 249.

[28] Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007). Withrow's conviction and sentence were journalized on September 29, 2011 (ECF # 6-19), and the notice of appeal was filed on October 25, 2011 (ECF # 6-20). Thus, the appeal is timely.

[29] ECF # 6-20.

[30] ECF # 6-22, at 2430.

[31] *Id.*, at 2437.

[32] *Id.*, at 2441.

The State filed a brief in response.[33] On October 22, 2012, the Ohio appeals court overruled all three assignment of error and affirmed the decision of the trial court.[34]

## 2.    *The Supreme Court of Ohio*

Withrow, through new counsel,[35] thereupon filed what appears to be a timely[36] notice of appeal with the Supreme Court of Ohio.[37] In his brief in support of jurisdiction, he raised one proposition of law:

> PROPOSITION OF LAW NO.1: Appellate counsel provided ineffective assistance.[38]

---

[33] ECF # 6-23.

[34] ECF # 6-1, at 1.

[35] Withrow acquired new counsel for this appeal, Rick L. Ferrara. ECF # 6-26, at 2526.

[36] Subject to the discussion herein, Withrow appears to have filed in a timely manner. To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought. *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010). As noted, the Ohio appellate decision was entered on October 22, 2012, and, after our review, the appeal with the Ohio Supreme Court was mailed on December 5, 2012, and filed on December 8, 2012 (ECF # 6-26 at 2526, 2527). This view leads to a 47-day difference in the time from the appellate court decision to the filing of Withrow's notice of appeal to the Ohio Supreme Court. The State indicates in their response to the writ that Withrow filed on December 6, 2012 (ECF # 5 at 29). The Ohio Supreme Court declined jurisdiction under S. Ct. Prac. R. 7.08(B)(4), which involves denial due to lack of a substantial constitutional question rather than a timeliness issue (ECF # 6-29). If the Ohio Supreme Court did not engage in some form of waiver in this regard, they have constructively waived the deadline by declining jurisdiction under the grounds stated above.

[37] *Id.*

[38] ECF # 6-27, at 2535.

-6-

This proposition contained four sub-propositions:

      a.      The Trial Court Failed to Suppress Identification Testimony Under Pre-Statutory Standards.[39]

      b.      The Trial Court Abused Its Discretion in Granting Improper For-Cause Challenges Against Two Petit Jurors.[40]

      c.      The State Committed Prosecutorial Misconduct by Indoctrinating Statements During Voir Dire and Opening Arguments.[41]

      d.      The Trial Court Prejudiced Appellant By Not Allowing Juror Notes.[42]

After the State filed a response,[43] The Supreme Court of Ohio declined jurisdiction on February 20, 2013.[44]

## C.      Rule 26(B) motion

### 1.      *Court of Appeals*

While his direct appeal was pending in the Supreme Court of Ohio, Withrow, through the same counsel who filed his appeal to the Supreme Court of Ohio, filed a Rule 26(B) application to reopen direct appeal.[45]

---

[39] *Id.*

[40] *Id.*, at 2538.

[41] *Id.*, at 2540.

[42] *Id.*, at 2542.

[43] ECF # 6-28.

[44] ECF # 6-29.

[45] ECF # 6-30.

In the application to reopen, Withrow proffered the same ground as argued on direct appeal to the Supreme Court of Ohio, which was ineffective assistance of appellate counsel, but with the added sub-issue that former appellate counsel, during the first appeal to the appellate court, did not properly argue the manifest weight and sufficiency of the evidence assignment of error on appeal.[46]

After the State filed a response,[47] the court of appeals denied this application to reopen on February 8, 2013.[48]

## 2.   *Supreme Court of Ohio*

Withrow, through the same counsel, filed an appeal from the appellate court's decision to deny his application to reopen direct appeal on March 25, 2013.[49] In his brief in support of jurisdiction, he raised one proposition of law:

> PROPOSITION OF LAW NO. 1: Ohio's Eleventh District Court of Appeals Should Have Granted Appellant's App.R. 26(B) Application to Reopen his Appeal.[50]

---

[46] *Id.*, at 2587.

[47] ECF # 6-31.

[48] ECF # 6-32, at 2623.

[49] ECF # 6-34.

[50] ECF # 6-35, at 2636.

-8-

After the State filed a response,[51] the Supreme Court of Ohio declined jurisdiction on June 5, 2013.[52]

## D.    Petition for writ of habeas corpus

On April 28, 2014, Withrow, *pro se*, timely filed[53] a federal petition for habeas relief.[54] As noted above, he raises three grounds of relief, ground three containing pertinent subclaims:

> GROUND ONE: The state failed to present sufficient evidence to sustain a conviction.[55]
>
> GROUND TWO: The petitioner's right to due process was violated when the trial court applied improper standard to identification testimony.[56]
>
> GROUND THREE: The petitioner received ineffective assistance of appellate counsel for failing to raise meritorious issues on appeal.[57]
>
> Supporting facts: Appellate counsel failed to raise or effectively argue the following issues which a reasonably competent attorney would have raised:

---

[51] ECF # 6-36.

[52] ECF # 6-37.

[53] The present petition for federal habeas relief was filed on April 28, 2014. ECF # 1 at 13. The petition was filed within one year of the conclusion of Withrow's motion to reopen direct appeal in the Ohio courts and so it is timely under 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F. 3d 280, 283-84 (6th Cir. 2000). Withrow's 90 days to file for a writ of certiorari were included in this calculation. Withrow did not file for a writ of certiorari.

[54] ECF # 1.

[55] *Id.* at 5.

[56] *Id.* at 6.

[57] *Id.* at 8.

failure to suppress I.D. standards under pre-statutory standard; failure to argue improper dismissal of two jurors; prosecutorial misconduct, refusal of trial ct [sic] to allow jurors to take notes; failed to submit an argument to support manifest weight issue.[58]

## Analysis

### A. Preliminary observations

Before proceeding further, I make the following preliminary observations:

1. There is no dispute that Withrow is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was incarcerated at the time he filed the petition.[59] Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[60]

2. There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute, subject to the discussion in footnote 35.[61]

3. In addition, Withrow states,[62] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[63]

---

[58] ECF # 1, at 8.

[59] Subject to the discussion in footnote 5.

[60] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[61] 28 U.S.C. § 2254(d)(1); *Bronaugh*, 235 F.3d at 283-84.

[62] *See*, ECF # 1 at 5, 7, 8. Although Withrow selects yes to the question of "Did you raise this issue through a post-conviction motion or petition for habeas corpus in state trial?" in ECF # 1 at 8, it appears that he is referencing his Rule 26(B) application to reopen direct appeal rather than a petition for a writ of habeas corpus.

[63] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

4. Moreover, subject to the procedural default discussion below, and subject to the fair presentment argument raised by the State, these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[64]

## B. Standards of review

### 1. *Procedural default*

A federal habeas court may not review a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or because the petitioner violated a state procedural rule.[65]

When a state asserts a violation of a state procedural rule as the basis for the default, the Sixth Circuit has promulgated a four-part test to employ when determining if the claim is, in fact, procedurally defaulted in a federal habeas proceeding:

a. Does a state procedural rule exist that applies to the petitioner's claim?

b. Did the petitioner fail to comply with that rule?

c. Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

d. Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[66]

---

[64] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[65] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

[66] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

-11-

As well as establishing these elements, the state procedural rule on point must be (1) firmly established, and (2) regularly followed before a federal habeas court will decline review of an allegedly procedurally defaulted claim.[67]

If a default is established, a petitioner may excuse her default if she can show (1) cause for default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claim's merits will result in a fundamental miscarriage of justice.[68] A showing of actual innocence may also excuse a petitioner's procedural default.[69]

A show of "cause" will generally require the petitioner to present some external, objective factor that prevented him from complying with the state procedural rule.[70] Showing "prejudice" requires the petitioner to show that the alleged constitutional error created an actual and substantial disadvantage to him, infecting the trial with error of constitutional magnitude.[71] The petitioner must show a reasonable probability of a different outcome at trial without the error or a showing that prejudice does not exist.[72]

---

[67] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[68] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[69] *Id.*

[70] *Id.* at 753.

[71] *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

[72] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

-12-

Although the discussion above is relevant, the Supreme Court has held that federal habeas courts need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[73] On that point, the Sixth Circuit has proclaimed that a federal habeas court may bypass an issue of procedural default when it contains complex questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[74]

## 2.    *AEDPA review*

If a claim asserted in a federal habeas petition was properly presented to the state courts and those courts adjudicated the merits of that claim, the controlling federal statute provides that a federal habeas court may only grant the writ if the state's decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[75]

When applying the statute, *Williams v. Taylor* offers guidance to federal habeas courts.[76] In *Williams*, the United States Supreme Court stated that a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than

---

[73] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[74] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[75] 28 U.S.C. § 2254(d).

[76] *Williams v. Taylor*, 529 U.S. 362 (2000).

-13-

this Court has on a set of "materially indistinguishable facts."[77] *Williams* also teaches that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[78]

Further, a federal habeas court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[79] Rather, the federal habeas court may vacate the state court holding only upon showing that it was "objectively unreasonable."[80]

The Supreme Court notes that the "objectively unreasonable" standard is "difficult to meet,"[81] and "highly deferential" to the decision of the state court.[82] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision"[83] In other words, a writ will issue only upon a showing that the state court's ruling

---

[77] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[78] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[79] *Williams*, 529 U.S. at 411.

[80] *Id.* at 409.

[81] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[82] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[83] *Richter*, 562 U.S. 102.

-14-

"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[84]

Beyond that, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[85]

According to *Harrington v. Richter*, a state court need not explain its conclusion when it adjudicates a federal claim on the merits.[86] When a criminal defendant presents a federal claim to the state court, which then denies it without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[87] In such an instance, the federal habeas court is required to show deference to the decision of the state court.[88]

---

[84] *Id.* at 102-03.

[85] *Id.*

[86] *Richter*, 562 U.S. at 99.

[87] *Id.*; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[88] *Brown*, 656 F.3d at 329.

C.      **Application of Standards**

1.      ***Grounds one and two, having not been presented to the Ohio Supreme Court on direct appeal and as distinct due process claims, are now defaulted due to res judicata.***

Grounds one (the State failed to present sufficient evidence to sustain a conviction) and two (the petitioner's right to due process was violated when the trial court applied improper standards of identification) are procedurally defaulted but, as a preliminary note, these claims will reappear in similar form within Withrow's third ground, which has not been defaulted and has been completely exhausted.

The state argues that grounds one and two were not presented by Withrow on appeal to the Ohio Supreme Court and *res judicata* now bars these claims from being exhausted.[89] After a review of the briefs submitted on direct appeal, and Withrow's application to re-open direct appeal, it is clear that Withrow did not present these distinct claims to the Ohio courts. Because Ohio courts would now preclude these claims from being asserted on the basis of *res judicata* in tandem with state filing deadlines,[90] such claims are deemed procedurally defaulted.

---

[89] ECF # 5, at 40.

[90] Ohio courts require that claims be presented at the earliest opportunity, and that failure to do so precludes the presentation of such claims at a later date. *Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014) (citing Ohio cases). This Ohio doctrine is considered by the federal habeas courts to be an adequate and independent state law ground for foreclosing federal habeas review. *Id.*

-16-

Read leniently, Withrow brings an argument to bear in his traverse attempting to show cause in order to excuse his procedural default.[91] Withrow notes that his appellate counsel failed to advise him of the 180-day Ohio statutory period in which an Ohio Revised Code § 2953.21 postconviction motion could have been brought and so his counsel was constitutionally ineffective, and his procedural default should be excused.[92] While this may be true, Withrow was still required to first present this claim to the Ohio courts on appeal before invoking it as cause to excuse a procedural default;[93] because he did not do this, this argument fails to excuse Withrow's default of these claims.

**2.** ***Ground Three, concerning ineffective assistance of appellant counsel, should be denied on the merits because the Ohio court's decision was not an unreasonable application of the clearly established federal law of Strickland v. Washington.***

Ground three should be denied on the merits because, upon review of its sub-claims, the Ohio court's conclusion that there was no *Strikland* violation is not an unreasonable one.

The Sixth Circuit took *Higgins v. Renico*[94] as an opportunity to refresh the understanding of the *Strickland* standard.[95] *Higgins* stated that *Strickland* required a

---

[91] ECF # 7 at 13.

[92] *Id.* (citing *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014)).

[93] *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Withrow twice asserted ineffective assistance of appellate counsel to the court of appeals and the Supreme Court, once in his direct appeal and again in his Appellate Rule 26(B) motion. In neither context did he make an argument about failure to advise of the statutory period for bringing a postconviction motion under Ohio Revised Code § 2953.21.

[94] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[95] *Strickland v. Washington*, 466 U.S. 668 (1984).

-17-

defendant to show that counsel's performance was seriously deficient and that the deficiency caused prejudice.[96]

The *Higgins* court then elaborated on the definition of seriously deficient; seriously deficient counsel falls below "an objective standard of reasonableness" under "prevailing professional norms."[97] Further, "counsel is strongly presumed to have rendered adequate assistance ... in the exercise of reasonable professional judgment."[98] The *Higgins* court also noted that the defendant has the burden of proving, by a preponderance of the evidence, that counsel made errors so egregious that counsel could no longer be defined as "counsel" under the Sixth Amendment.[99] Great deference is shown to trial counsel and they cannot be proven ineffective as long as the approach they have taken can be considered a "sound trial strategy."[100]

If the defendant can establish that counsel was deficient, he must then show prejudice stemming from that deficiency. The *Higgins* court sheds more light on what is required to show prejudice. Not every error that had an effect on the trial will be defined as prejudicial; only errors that create a reasonable probability of a different outcome can be prejudicial.[101]

---

[96] *Higgins*, 470 F.3d at 631 (internal citations omitted).

[97] *Id.* at 629.

[98] *Id.* at 632.

[99] *Id.*

[100] *Id.* at 631.

[101] *Id.* at 633-34

A reasonable probability is one that undermines confidence in the outcome at trial.[102] Overall, a court must focus on the fairness of the proceeding involved and should look for a "breakdown in the adversarial process that our system counts on to produce just results."[103] Actual prejudice is also weighed against the amount of evidence that was presented at trial; a small amount of evidence will create a greater chance that mistakes affected the outcome and the opposite when a large amount of evidence is presented.[104]

Because a claim of ineffective appellate counsel is Withrow's overarching claim, the appellate court relies on *Strickland* in their denial of his Rule 26(B) application to reopen. To be discussed in greater detail below, there was no prejudice to be found in Withrow's sub-claims contained in his writ, and these claims should be denied on the merits as a whole by denying ground three.

a.    *The first sub-claim of ground three (alleging ineffective counsel due to lack of argument on appeal that the trial court erred in not suppressing the pre-trial identification of Withrow) should be denied on the merits after AEDPA review because the decision of the Ohio courts included consideration of federal claims and was not contrary to the clearly established federal law of United States v. Wade and Neil v. Biggers and no Strickland violation is present.*

In essence, Withrow's argument fails even though his appellate counsel structured his argument to suppress identification testimony around an inapplicable section of the Ohio

---

[102] *Id.*

[103] *Id.* (internal citations omitted).

[104] *Id.*

-19-

Revised Code.[105] Counsel argued that Ohio Revised Code § 2933.93 passed after the trial and is not retroactive to the time of the trial. Because the photo array evidence was not impermissibly suggestive, no *Strickland* violation is present because appellate counsel's error, if any, did not change the outcome of the trial.

The state appellate court properly applied the federal standards. *Manson v. Brathwaite* states that suppression will occur if the defendant can demonstrate that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[106] If the defendant can prove that the identification was impermissibly suggestive then the court would engage in a *Neils v. Biggers* evaluation.[107]

*U.S. v. Wade* sheds light on what the Supreme Court of the United States sees as impermissibly suggestive. *Wade* gives examples: all of the participants in the lineup were known to the identifying witness but the suspect, "grossly dissimilar" appearance between the suspect and the others in the lineup, the suspect is made to wear distinctive clothes that only the suspect was known to wear, and so on.[108]

In his motion to reopen direct appeal, Withrow argues that the photo array was impermissibly suggestive because it was composed of black and white photographs, was

---

[105] ECF # 6-32, at 2619.

[106] *Manson v. Brathwaite*, 432 U.S. 98, 122 (1977) quoting *Simmons v. U.S.*, 390 U.S. 377, 384 (1968).

[107] *Neils v. Biggers*, 409 U.S. 188, 199-200 (1972).

[108] *U.S. v. Wade*, 388 U.S. 218, 233 (1967).

conducted by lead investigators, and the photo of Withrow was the only photo in which the head of the person photographed was positioned looking downward and to the right.[109] The appellate court's review of the record showed that photos chosen by police were chosen because of their similarities to the descriptions given by the identifying witnesses prior to their observance of the photo array.[110] The appellate court's conclusion was reasonable because the examples given by Withrow do not match or come near the examples set out in *Wade* discussed above. The contention that the head position of Withrow in his photo was impermissibly suggestive could lead like-minded jurists to disagree. It is possible that this sort of head position could lead to a less suggestive position for Withrow as less of his face can be seen and an identifying witness may not be able to match characteristics from their memory to the picture. The appellate court correctly halted its analysis and did not continue to a *Biggers* totality of the circumstances evaluation.

Withrow cites no case law stating that the errors he alleges were contained within photo array process were impermissibly suggestive and they do not comport with the examples set out in *Wade*, discussed above.[111]

Withrow's appellate counsel argued that Ohio Revised Code § 2933.93, passed after the admission of the identification testimony at trial, could not retroactively affect the trial.[112]

---

[109] ECF # 6-30, at 2590.

[110] ECF # 6-1, at 9.

[111] ECF # 6-30, at 2590.

[112] ECF #6-32, at 2619.

This error created no prejudice to Withrow, however, because the appellate court applied the proper identification standard of review and found that there was no impermissible suggestion in the police photo array. Therefore, no *Strickland* violation exists for this sub-claim.

b.  *The second sub-claim under ground three (failure to raise as issue the dismissal of two petit jurors) was found to present no Strickland violation because the dismissed jurors could have held a bias against either the defendant or the state and so no Strickland violation exists.*

No *Strickland* violation exists in this sub-claim because the petit jurors that were dismissed were potentially biased against either the defendant or the state; arguing that these jurors should have been admitted may have actually caused prejudice.

As stated above, a *Strickland* violation will exist where counsel was seriously deficient and that his or her mistakes prejudiced the defendant. For the immediate purposes, the Fourteenth Amendment has been solidified by the Supreme Court in *Morgan v. Illinois*, ensuring a defendant that he is to be tried by an impartial jury.[113] The presence of even one biased juror sacrifices the defendant's right to an impartial jury trial.[114] Trial courts are shown great deference in their removal and may only be overturned in the case of "manifest error"[115]

---

[113] *Morgan v. Illinois*, 504 U.S. 719, 726 (1992).

[114] *See id.*, at 729.

[115] *Hill v. Brigano*, 199 F.3d 833, 843 (1999); *cert. denied* 529 U.S. 1134 (2000).

-22-

The trial court believed that the two petit jurors who were dismissed should be dismissed because they held a possible bias against either the state or the defendant.[116] Specifically one juror was removed because he was an ex-corrections officer with possible bias against the state because he was pushed out of his job or possible bias against the defendant because he had spent many years working as a corrections officer with convicted criminals and may have harbored ill will against potential inmates.[117] The second dismissed juror was "squeamish" around violent or gruesome images and was removed because she may have become distracted or distracted other jurors.[118] Because there is valid reasoning in the jurors' possible bias and the standard for overturning a trial court's decision to remove a petit juror is very high, the appellate court's conclusion that the state trial court did not create "manifest error" is reasonable.

It would also be hard to say that Withrow's appellate counsel committed an error so egregious by not arguing that the trial court abused its discretion in removing these jurors that Withrow was prejudiced. It is possible that like-minded jurists may disagree on whether these jurors would have had a negative or, more importantly, a positive effect on the outcome of the trial for Withrow. If this failure to argue could be seen as an error, under *Strickland*, Withrow would have to prove that this error undermined the just outcome of the trial, which he does not do in his application to reopen direct appeal or in his traverse.

---

[116] ECF # 6-12, at 621; ECF # 6-11, at 455-56.

[117] ECF # 6-12, at 621.

[118] ECF # 6-11, at 455-56.

-23-

The appellate court's conclusion that no *Strickland* violation existed was reasonable. Because the petit jurors who were dismissed had a possible bias against either party involved in the trial, the appellate court concluded that the removal was not an abuse of the trial court's discretion. Therefore, no *Strickland* violation exists in this sub-claim because appellate counsel was not in error; appellate counsel essentially would have been arguing that removal of possibly biased jurors was abuse of discretion. It may have been a greater error for appellate counsel to argue that these two jurors should have been admitted to the trial jury group.

c.      *Sub-claim three (appellate counsel failed to argue prosecutorial misconduct on appeal) was reasonably found to contain no Strickland violation because appellate counsel did, in fact, argue the most meritorious issue that Withrow raises here, and the other issues Withrow believes should have been argued did not create an unfair atmosphere at trial.*

The appellate court found no *Strickland* violation in this sub-claim because appellate counsel made an argument on the only issue raised by Withrow that garnered enough merit to be seen as worth raising, but his argument failed in the face of the strong evidence produced by the State at trial.

The federal standard for prosecutorial misconduct will not consider every inflammatory statement made by the prosecution to be grounds for reversal.[119] It is noted that even the most seasoned attorneys can get caught up in the heat of the moment and

---

[119] *Dunlop v. U.S.*, 165 U.S. 486, 498 (1897).

-24-

misspeak.[120] For habeas corpus relief to be granted, a prosecutor's statement must be so egregious that it created a fundamentally unfair atmosphere at trial.[121] Defendant must also show that the claim was false and that it was material.[122] In other words, if the statement could be proven by some other evidence, a violation will not exist.[123]

The issue that was argued on appeal by Withrow's appellate counsel who is currently being scrutinized involved a line of questioning in which a prosecutor asked a police investigator about the credibility of Withrow's alibi; the investigator responded that he thought Withrow was lying.[124] The appellate court, after reviewing Withrow's appellate brief, decided that the testimony should not have been admitted but the error of the trial court was harmless because a substantial amount of evidence existed that would back the claim made by the officer regardless of the fact that the officer's statement should not have been left on the record.[125] A similar federal proposition was stated in *Byrd v. Collins*, discussed above at footnote 125. Reviewing the record and noting in particular that Withrow himself told

---

[120] *Id.*

[121] *U.S. v. Young*, 470 U.S. 1, 15 (1985).

[122] *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000), *cert. denied*, 121 S. Ct. 786 (2001).

[123] *Id.*

[124] ECF # 6-15, at 1458, 1459.

[125] ECF # 1 at 10.

-25-

investigators he had lied about his alibi in later interviews,[126] the appellate court reasonably concluded that the error was in fact harmless.

The state appellate court concluded that the other examples of prosecutorial misconduct Withrow believes should have been presented by his appellate counsel were nothing more than examples of zealous advocacy on the part of the State. These examples of alleged prosecutorial misconduct involved statements made by a prosecutor proclaiming that all of the evidence in the trial came from the State, that Withrow was guilty, and that some witnesses were "pirates."[127] The "pirate" indication was created by the State to inform jurors that some witnesses were drug users but their testimony should not be disregarded outright.[128] For these statements to have been a valid topic for argument of prosecutorial misconduct on appeal they would have needed to seriously hinder the defendant and create a fundamentally unfair atmosphere.[129] The appellate court believed that the prosecutor's statements displayed nothing more than "zealous advocacy on behalf of the state," and created no prejudice requiring appellate review.[130]

The appellate court reasonably concluded that no *Strickland* violation exists within this sub-claim because appellate counsel actually argued the most meritorious example

---

[126] ECF # 6-15, at 1472-73.

[127] ECF # 6-30, at 2593.

[128] *Id.*

[129] *Young*, 470 U.S. at 15.

[130] ECF # 6-32, at 2622.

proffered by Withrow in his motion to reopen direct appeal but that argument failed in the face of the evidence presented at trial. The appellate court rightly concluded that the remaining examples of prosecutorial misconduct were without merit.

d.      *Sub-claim four (appellate counsel was ineffective because he did not present an argument concerning preclusion of jury note-taking) was found to create no prejudice because Withrow puts forth only speculative support to buttress his argument.*

Because Withrow put forth only speculative and hollow arguments supporting his assertion that the preclusion of juror note-taking created prejudice at trial, the state appellate court reasonably concluded that Withrow's appellate counsel cannot be deemed ineffective under *Strickland* for failing to put forth an argument on the issue.

The state appellate court points out that the decision to permit or prohibit juror note-taking is left to the discretion of the trial court.[131] The appellate court highlights the complete speculation involved in determining whether lack of juror note-taking actually prejudiced Withrow, stating that jurors may have taken enormous amounts of notes or none at all had they been allowed to.[132]

The state appellate court reasonably concluded that no *Strickland* violation existed when Withrow's appellate counsel failed to argue that lack of juror note-taking hindered Withrow's case at trial. Withrow advanced only speculative arguments and failed to show that the decision of the trial court was arbitrary or unreasonable in any way.

---

[131] *Id.*

[132] *Id.*, at 2623.

-27-

e.   *Sub-claim five (appellate counsel failed to submit an argument to support manifest weight issue) contains no Strickland violation because regardless of the length of appellate counsel's brief on the issue, the state appeals court reasonably concluded that the manifest weight supported the verdict.*

Because the state appellate court reviewed the record and concluded that there was sufficient evidence to convict Withrow, there is no prejudicial *Strickland* violation where appellate counsel put forth a meager brief.

It seems that Withrow has confused sufficiency of the evidence and manifest weight of the evidence.[133] In his writ he contends that appellate counsel failed to present an argument on manifest weight but in order to invoke a due process claim he would need to argue sufficiency of the evidence. Because federal standards encompass Ohio's distinct manifest weight claims and sufficiency of the evidence claims, I will move forward in discussing Withrow's sub-claim as if he put fourth a lack of sufficient evidence argument.

A federally sufficient claim is one that "fairly [supports] a conclusion that every element of the crime has been proven beyond a reasonable doubt."[134] The relevant question for the court is whether, after reviewing the evidence in the light most favorable to the

---

[133] Withrow argues lack of sufficient evidence, a cognizable, federal claim in ground one of his writ for habeas relief. In ground three, under supporting facts, Withrow argues that appellate counsel failed to put fourth an argument on a lack of manifest weight. Manifest weight issues are not federal issues, they are state issues. However, given that Withrow is proceeding *pro se*, I will read his brief as if he had argued a sufficiency of evidence issue in order to exhaust all avenues of possible relief.

[134] *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979).

-28-

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, not whether the reviewing court believes the evidence.[135]

It should be noted that in his application to reopen direct appeal, Withrow argued that there was insufficient evidence regarding prior calculation in the killing of Post at trial.[136] This argument has some merit on its face but fails to rid Withrow of guilt. Withrow misses Ohio Revised Code § 2903.01(B), which is essentially an expanded felony murder rule; the pertinent section contains "aggravated robbery," which Withrow was convicted of and does not contest sufficiency, as a circumstance for conviction of aggravated murder.[137]

In inspecting the evidence presented at trial, the state appellate court engaged in an extensive review of the record.[138] Although the appellate court notes that no physical evidence exists, the circumstantial evidence produced by the State was diverse and on point.[139] Most notably, the state appellate court highlights the testimony of Schick on the instance when Withrow told Schick that he had "killed the guy inside" of Post's apartment.[140] The State also produced evidence explaining why no physical evidence was recovered with

---

[135] *Id.* at 319.

[136] ECF # 6-30, at 2588.

[137] Ohio Rev. Code § 2903.01(B).

[138] ECF # 1 at 12.

[139] *Id.*

[140] *Id.*

testimony from a forensic scientist.[141] The state appellate court concludes that they do not think a jury could have "lost its way" with all of the evidence that was presented at trial, and I am inclined to agree.[142] Using the vast amount of evidence put forth by the State at trial, it is a reasonable conclusion that a trier of fact could find all essential elements of Ohio Revised Code § 2903.01, in pertinent part "no person shall purposely cause the death of another ... while committing or attempting to commit ... aggravated robbery."

Thus, even in the light of appellate counsel's lacking brief[143] the appellate court properly reviewed the evidence entered at trial and found that it was sufficient. Appellate counsel's error, if a short brief can be considered an error in this case, did not substantially alter the outcome of the appeal and so no *Strickland* violation is present.

---

[141] *Id.* at 13.

[142] *Id.*

[143] ECF # 6-22, at 2441.

## Conclusion

Grounds one and two have been procedurally defaulted, and Withrow has shown no cause to excuse the default; therefore, these claims should be dismissed.[144] Additionally, because the appellate court reasonably found that no *Strickland* violation existed in any of the sub-claims beneath ground three, ground three should be denied on the merits.

Dated: June 30, 2015                    s/ William H. Baughman, Jr.
                                        United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[145]

---

[144] Withrow also fails to show or argue actual innocence so as to excuse his procedural default.

[145] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).